## D. C. GREENLEAF v. MINNEAPOLIS, ST. PAUL, & SAULT STE. MARIE RAILWAY COMPANY, a Corporation.

(L.R.A.—, 151 N. W. 879.)

**Attorneys' lien — on money — in hands of adverse party — tort actions — personal injuries — actions on contracts.**

1. Section 6293, Rev. Codes 1905, being § 6875, Compiled Laws of 1913, and which provides for an attorney's lien on "money due his client in the hands of the adverse party, or attorney of such party, in an action or proceeding in which the attorney claiming the lien was employed from the time of giving notice in writing," applies to tort actions for personal injuries as well as to actions which are founded upon contract, and this although such actions do not survive the death of the plaintiff.

**Actions — proceedings — damages — personal injuries.**

2. The words "action" and "proceeding" as used in § 6293, Rev. Codes 1905, § 6875, Compiled Laws 1913, include actions and proceedings for the recovery of damages for personal injuries.

---

Note.—A review of the authorities in a note in 3 L.R.A.(N.S.) 379, on the question of attorney's lien on cause of action for tort, shows that, in the absence of statute, there is no such lien. But where the statute in general terms gives an attorney a lien upon "money due his client in the hands of an adverse party," as was the case in GREENLEAF v. MINNEAPOLIS, ST. P. & S. STE. M. R. Co. without expressly limiting it to actions upon contract, he is entitled to a lien for his fees in actions of tort.

The general question of lien of attorney is treated in notes in 51 Am. St. Rep. 251 and 19 L. ed. U. S. 992.

**Action — an orderly proceeding in a court of justice — party's right — enforcement of — wrong — prevention of.**

3. An action is "an ordinary proceeding in a court of justice by which a party prosecutes another party for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense."

**Proceeding — meaning of — courts.**

4. The term "proceeding" includes the form and manner of considering judicial business before a court or judicial officer, and regular and ordinary proceedings in form of law, including all possible steps in an action from its institution to the execution of judgment.

**Statutes — language of — unambiguous — legislature — motive — not for courts to inquire.**

5. Where the language of a statute is unambiguous, it is not for the courts to inquire as to the motive of the legislature nor to depart from the meaning which is clearly conveyed.

**Attorney's lien — merger — judgment — compromise agreement — voluntary payment — cannot satisfy.**

6. The attorney's lien given by § 6293, Rev. Codes 1905, § 6875, Compiled Laws of 1913, when sought to be asserted in an action or proceeding for the recovery of damages for personal injuries, attaches to that into which the right of action is merged. If a judgment is recovered the lien attaches to it; if a compromise agreement is made the lien attaches to it; and in either case the attorney's lien is such that it cannot be defeated or satisfied by a voluntary payment to his client without his consent.

**Policy of the law — attorney — lien — settlement by client — agreement to deprive client from right — void.**

7. It is opposed to the policy of the law, and § 6293, Rev. Codes, 1905, § 6875, Compiled Laws of 1913, gives to an attorney no right, to prevent his client from himself settling his claim for damages for personal injuries and without dictation by such attorney. An agreement which seeks to deprive the client of such right is void, but it does not otherwise invalidate an agreement for contingent fees which is otherwise valid.

**Lien — notice of — settlement of claim with client — attaches to proceed — percentage.**

8. Where a lien is claimed under § 6293, Rev.Codes, 1905, § 6875, Compiled Laws of 1913, in an action for personal injuries, and due notice thereof is given to the defendant and a settlement or compromise is made with the plaintiff, with or without the consent of the attorney, such lien will attach merely to the proceeds of the settlement, and if the contract or lien is for a percentage of the claim or recovery, will merely be for such percentage of the amount for which such claim is settled or compromised.

Opinion filed January 9, 1915, Rehearing denied March 18, 1915.

30 N. D.—8.

Appeal from the District Court of Ward County, *F. E. Fisk,* J., special judge. Action to recover on an attorney's lien. From an order sustaining a demurrer to the complaint plaintiff appeals.

Reversed and remanded.

*E. R. Sinkler* and *W. F. Doherty,* for appellant.

Where the legislature enacts a provision taken from a statute of another state or country in which the language of the act has received a settled construction, it is presumed to have been intended that such provision should be understood and applied in accordance with that construction. Cass County v. Security Improv. Co. 7 N. D. 536, 75 N. W. 775; Besser v. Alpena Circuit Judge, 155 Mich. 631, 119 N. W. 902; Nicollet Nat. Bank v. City Bank, 38 Minn. 85, 8 Am. St. Rep. 643, 35 N. W. 577; State ex rel. McCue v. Blaisdell, 18 N. D. 31, 119 N. W. 361; Kan. Gen. Stat. 1868, § 8.

An attorney has a lien in a tort action. Anderson v. Metropolitan Street R. Co. 10 Kan. App. 575, 61 Pac. 982; Smith v. Chicago, R. I. & P. R. Co. 56 Iowa, 720, 10 N. W. 244; Gibson v. Chicago, M. & St. P. R. Co. 122 Iowa, 565, 98 N. W. 474; Barthell v. Chicago, M. & St. P. R. Co. 138 Iowa, 688, 116 N. W. 813; Winslow v. Central Iowa R. Co. 71 Iowa, 197, 32 N. W. 331; Clark v. Sullivan, 3 N. D. 283, 55 N. W. 733; Anderson v. Itasca Lumber Co. 86 Minn. 480, 91 N. W. 12, 291; Corson v. Lewis, 77 Neb. 449, 114 N. W. 281; 23 Am. & Eng. Enc. Law, 155.

There can be no departure from the terms of the statute where no absurdity or inconvenience will follow from a liberal construction. 26 Am. & Eng. Enc. Law, 598; Gibson v. Chicago, M. & St. P. R. Co. 122 Iowa, 565, 98 N. W. 475.

*Palda, Aaker, & Greene,* for respondent.

The plaintiff's firm did not acquire any interest in their client's cause of action, or any lien upon any sum of money which might be recovered either through judgment or compromise settlement. An attorney's valid lien amounts to an assignment of an interest in his client's cause of action. Clark v. Sullivan, 3 N. D. 280, 55 N. W. 733; Lown v. Casselman, 25 N. D. 44, 141 N. W. 73.

This is an action in tort, and such a cause, for personal tort, is not assignable, and defendant could settle or pay without hindrance. 4 Cyc. 24, and note 46; Weller v. Jersey City, H. & P. Street R. Co.

68 N. J. Eq. 659, 61 Atl. 459, 6 Ann. Cas. 442; Howard v. Ward, 31 S. D. 114, 139 N. W. 771; Lawrence v. Martin, 22 Cal. 174; Coughlin v. New York C. & H. R. R. Co. 71 N. Y. 443, 27 Am. Rep. 75; John V. Farwell Co. v. Wolf (John V. Farwell Co. v. Josephson) 96 Wis. 10, 37 L.R.A. 138, 65 Am. St. Rep. 22, 70 N. W. 289, 71 N. W. 109; Pulver v. Harris, 52 N. Y. 73; Murray v. Buell, 76 Wis. 657, 20 Am. St. Rep. 92, 45 N. W. 667; Tyler v. Superior Ct. 30 R. I. 107, 23 L.R.A.(N.S.) 1045, 73 Atl. 467; Boogren v. St. Paul City R. Co. 97 Minn. 51, 3 L.R.A.(N.S.) 379, 114 Am. St. Rep. 691, 106 N. W. 104; Smelker v. Chicago N. W. R. Co. 106 Wis. 135, 81 N. W. 994; Hanna v. Island Coal Co. 5 Ind. App. 163, 51 Am. St. Rep. 246; Hammons v. Great Northern R. Co. 53 Minn. 249, 54 N. W. 1108; Anderson v. Itasca Lumber Co. 86 Minn. 480, 91 N. W. 12, 291.

The original action was for a personal tort, did not survive, and was not assignable. 4 Cyc. 23, 24; Courtney v. McGavock, 23 Wis. 619.

BRUCE, J. This is an appeal from an order sustaining a general demurrer to a complaint. The only question involved is whether an attorney who has made an agreement with his client in a personal injury action for a percentage "of any amount received, recovered, or obtained from the said defendant by reason of the injuries sustained by him, either in settlement or by action," and who subsequently serves upon the defendant a notice of an attorney's lien based upon such agreement, can recover from such defendant such percentage on the amount which the said defendant has paid to the plaintiff in settlement of the claim and action, before judgment, and without the knowledge or consent of the said attorney. More specifically the question is: Does subdivision 3 of § 6293, Rev. Codes 1905, § 6875, Compiled Laws 1913, provide for attorneys' liens in the case of unliquidated claims for personal injuries? We think it does.

The statute, § 6293, Rev. Codes 1905, 6875, Compiled Laws of 1913, provides that "an attorney has a lien for a general balance of compensation in and for each case upon: . . . 3. *Money due* his client in the hands of the adverse party, or attorney of such party, in *an action or proceeding* in which the attorney claiming the lien was employed *from the time* of giving notice in writing to such adverse party or the

attorney of such party, if the money is in the possession or under the control of such attorney, which notice shall state the amount claimed and in general terms for what services."

Counsel for defendant and respondent claims, and the demurrer was no doubt sustained upon the theory, that: "(1) Lundy's claim against the defendant was for damages alleged to have been sustained through the negligence of the defendant, which resulted in certain personal injuries of a serious character to said Lundy. It was, therefore, a tort action or demand. (2) An attorney's lien, if a valid one, amounts to an assignment of an interest in his client's cause of action. (3) A cause of action for a personal tort cannot be assigned unless there is a statute declaring that such a cause of action shall not abate on the death of the injured party, or a statute expressly authorizing such assignment. (4) There is no statute in this state in derogation of the common-law rule that a cause of action for personal tort is not assignable, and does not survive. (5) It is against public policy, and therefore contrary to law, to recognize the right of a person to assign an interest in a claim which would not survive his death."

The first proposition, of course, is to be accepted. The action is certainly a tort action.

We, too, no doubt, have held in the cases of Clark v. Sullivan, 3 N. D. 280, 55 N. W. 733, and Lown v. Casselman, 25 N. D. 44, 141 N. W. 73, that an attorney's lien is in the nature of an equitable assignment of an interest in the claim. The subsequent conclusions of counsel, however, seem by no means to flow from these premises. Nor can we concede that in North Dakota, or indeed in any state, it is necessarily against public policy and therefore contrary to law to recognize the right of a person to assign an interest in a claim which would not survive his death, or at any rate that the legislature may not authorize such an assignment. Would anyone, for instance, claim that if a person had contracted for an annuity during his life, and interest in that annuity during the lifetime of the insured could not be assigned merely because under the contract the payments would stop at his death?

There is, in short, nothing in the nature of things which makes survivorship an essential to the legislative right to create a statutory lien. All that the question of survivorship affects is the right of assignability and the securing of a claim thereby when the statute is

silent and itself creates no lien. It is true that there is some confusion of thought upon the subject to be found among the authorities; but the confusion can, we believe, all be traced to one basic error, and that is the failure to distinguish between the cases which were decided in states and at a time when no statutory lien or right of an assignment was given or authorized, and in which the common-law rules as to assignability and as to attorneys' liens were alone to be relied upon, and those in which the legislature had spoken and in which a statutory lien such as ours had been created.

The Illinois cases of North Chicago Street R. Co. v. Ackley, 171 Ill. 100, 44 L.R.A. 177, 49 N. E. 222, and Standidge v. Chicago R. Co. 254 Ill. 524, 40 L.R.A.(N.S.) 529, 98 N. E. 963, Ann. Cas. 1913C, 65, illustrate the point. At the time of the transaction which was passed upon in the former of these cases, no statutory lien existed in Illinois, and the plaintiff's attorney had attempted to avoid the fact and to protect his claim by having the cause of action assigned to him as security for his fees. This the court held could not be done in the absence of statutory authority, as *the cause of action did not meet the common-law criterion* of assignability which seems to have been survivability. Between the handing down of the opinion in this case, however, and that in the later case of Standridge v. Chicago R. Co. supra, the legislature had intervened and created such a lien, and the court in the later opinion sustained the statute and the lien without even mentioning the elements of survivability or assignability.

The question, indeed, for us to determine is not whether the cause of action survives and is assignable, but whether, in enacting the statute under consideration, the legislature intended that its provisions should apply to tort as well as to contract actions. We think it did. If the North Dakota legislature intended that such a lien should exist, the cases which are founded on the common-law rule are certainly not applicable. There is no constitutional provision which forbids the enactment of any such statute. The allowance of such a lien cannot be said to be against public policy if the statute is otherwise valid, for public policy is the policy of the people of a state as a whole, and in the absence of a constitutional inhibition can be adequately and fully expressed by the legislature of a state. Northern P. R. Co. v. Richland County, 28 N. D. 172, L.R.A.1915A, 129, 148 N. W. 545.

It is true that the statute in North Dakota does not provide that actions for personal injuries shall survive the death of the plaintiff. It seems, however, to be universally conceded, and even by the authorities on which respondent relies, that if such a statute existed, a lien such as that which is claimed in the case at bar would be valid and enforceable.   Corson v. Lewis, 77 Neb. 449, 114 N. W. 281.   It seems, too, to be conceded that, even in the absence of a statute of survivorship, such a lien would be enforceable upon the rendition of the judgment. Anderson v. Itasca Lumber Co. 86 Minn. 480, 91 N. W. 12.

In commenting upon the Iowa case of Smith v. Chicago, R. I. & P. R. Co. 56 Iowa, 720, 10 N. W. 244, the Minnesota court, for instance, in the case of Anderson v. Itasca Lumber Co. supra, says: "For authority we are cited to the case of Smith v. Chicago, R. I. & P. R. Co. supra. In that case attorneys were employed by a party claiming a cause of action against the defendant for personal injuries, and notice of the attorney's lien had been served upon the defendant pending the action. After the entry of judgment, the client and defendant settled the case regardless of the attorney's notice, whereupon they brought suit against defendant to recover the amount of their fees, claiming a lien upon the money in its possession, and the court held in their favor.   The statute upon which the court based its decision is similar to our own, but there is this distinction between the cases: In the Iowa suit the cause had ripened into a judgment, and therefore the attorney's claim had become vested in that judgment by virtue of which money actually became due the plaintiff from the adverse party."   What distinction, however, there can be between a tort action after judgment and a tort action after a settlement between the parties it is difficult for us to see.   The Minnesota case of Anderson v. Itasca Lumber Co. supra, says that the lien in the Iowa case of Smith v. Chicago, R. I. & P. R. Co. supra, was properly asserted because there was money which was actually due.   Would anyone claim that after a valid settlement and agreement between the plaintiff and the railroad company, and before the payment of the amount agreed upon on such settlement, there was not a liquidated sum of money actually due in the hands of the company and belonging to the plaintiff ?   After such settlement, he certainly could have sued in contract for the recovery thereof.   It is admitted

that an action in contract is assignable and the subject of a lien. It is also admitted that the inchoate right to a lien, which was suspended until the rendition of a judgment in the Iowa case, was not made invalid because it had been so suspended, but, when the judgment was once obtained, could rest thereon. Why in the case at bar is it not reasonable to hold that under our peculiar statute the lien of the attorney, though suspended until a settlement or a judgment, became vested when that settlement was agreed upon and became a contract and the subject of an action in assumpsit? The only question in such cases should be whether there was any such settlement, and the defendant cannot deny the fact in this case, as it seems to have recognized it by paying over the money.

It is to be noticed indeed that the North Dakota statute uses the terms "action" and "proceeding" generally, and in no sense limits or qualifies their use. If it did not intend that the terms should cover tort as well as contract actions, why did it not use some qualifying clause, such as "an action or proceeding arising in contract" or "an action or proceeding not arising in tort?" We have, indeed, no option but to adopt the ordinary and statutory definition of the term "action" as well as the generally accepted meaning of the word "proceeding." According to the Code, an action is "an ordinary proceeding in a court of justice by which a party prosecutes another party for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense." Rev. Codes 1905, § 6742, Comp. Laws 1913, § 7330. According to the general acceptation of the term also, "the term 'proceeding' includes the form and manner of conducting judicial business before a court or judicial officer, regular and orderly progress in form of law; including all possible steps in an action from its institution to the execution of judgment. In a more particular sense, any application to a court of justice, however made, for aid in the enforcement of rights, for relief, for redress of injuries, for damages, or for any remedial object." 23 Am. & Eng. Enc. Law, 2d ed. 155.

The rule of statutory construction is well established. It is that, "if the language is clear and admits of but one meaning, the legislature should be intended to mean what it has plainly expressed, and there is no room for construction. The plain and sound principle is to declare it *lex scripta est,* although, so understood, the statute leads to absurd and

mischievous results, or to consequences not contemplated by the legislature; for courts are not to inquire as to the motive of the legislature, nor to depart from a meaning clearly conveyed in unambiguous words, because the statute, as literally understood, appears to lead to unwise consequences or to contravene public policy. *A fortiori,* there can be no departure from the terms of the statute, where no absurdity or inconvenience will follow from a literal interpretation, 26 Am. & Eng. Enc. Law, 2d ed. 598.

It would appear to us that a plain reading of the statute before us can admit of but one construction, and that is that the words "action" and "proceeding" therein used include every form of action, whether founded on tort or in contract. We cannot say that the statute intervenes public policy, for, as we have before intimated, the legislature can announce its own public policy.

Nor are we without authority for coming to this conclusion. In speaking of a statute of Kansas which was in all material respects identical to our own, and from which our statute can no doubt trace its origin, even if it was not directly copied therefrom, the late Mr. Justice David J. Brewer, then a judge of the supreme court of Kansas, and before the adoption in North Dakota or in the territory of Dakota of the statute which is now before us, said: "Will the lien exist where the only claim of the plaintiff is one for damages for personal injury, unliquidated and undetermined by judgment or verdict? In other words, may a defendant when sued in such an action, and before trial and verdict, settle with the plaintiff, pay him a certain amount, obtain a release and satisfaction of the claim, and thus free himself from all further liability either to the plaintiff or to his attorney, notwithstanding such attorney has, prior to the settlement, given notice of a claim for a lien, and such plaintiff is insolvent and irresponsible? This question must be answered in the negative. The lien will exist, and the defendant cannot thus defeat it. *It is unnecessary to inquire whether this would have been the rule independent of statute. This gives a lien not simply upon a judgment, but upon 'money due.'* It does not specify *for what the money must be due, nor limit the lien to any particular class of liability or form of action.* Wherever an action is pending, in which money is due, the attorney may establish his lien. And in an action, the verdict and judgment do not create the liability,

do not make the 'money due.' They are simply the conclusive evidence of the amount due from the commencement of the action. Again, according to the statute the lien dates from 'the time of giving notice.' " Kansas P. R. Co. v. Thacher, 17 Kan. 92; Anderson v. Metropolitan Street R. Co. 10 Kan. App. 575, 61 Pac. 982.

Following these cases, also, are the Iowa cases of Smith v. Chicago, R. I. & P. R. Co. 56 Iowa, 720, 10 N. W. 244; Gibson v. Chicago, M. & St. P. R. Co. 122 Iowa, 565, 98 N. W. 474; Barthell v. Chicago, M. & St. P. R. Co. 138 Iowa, 688, 116 N. W. 813; and Winslow v. Central Iowa R. Co. 71 Iowa, 197, 32 N. W. 331, which base their holdings upon the Kansas decision and come to the same conclusion, and later still and to the same effect the Illinois case of Standidge v. Chicago R. Co. 254 Ill. 524, 40 L.R.A.(N.S.) 529, 98 N. E. 963, Ann. Cas. 1913C, 65.

It is true that in Iowa there was also a statute which made a cause of action for personal injury survive the death of the plaintiff. The Iowa court, however, in no way based its holding upon this fact, nor did it make any reference to it or to the statute in any of the opinions cited. In the leading case of Smith v. Chicago, R. I. & P. R. Co. supra, the Iowa court said: "In the case at bar the parties agreed upon $200 as the amount due. So far, the lien caused no embarrassment in the payment. The company should have paid the claimants' attorneys, the present plaintiffs' and allowed them to settle with their client for what their services were worth. But the defendant claims that it was its right to pay the claimant directly, in the absence of the attorneys, and without their knowledge. The right to make such payment would doubtless be valuable in many cases. It is well known that irresponsible and unscrupulous claimants can be settled with upon more favorable terms after expensive litigation, if they can be allowed to receive the whole payment and cheat their attorneys. But, however valuable the right may be, this consideration has no weight when addressed to a court; nor do we think that there is anything which we can notice in the objection that, if a lien is allowed, attorneys will advise against proper settlements by compromise. The lien is valuable mainly where the claimant is irresponsible. Where such is the case, and the claim is a doubtful one, the attorneys are as much interested in settling by compromise as the claimant. Having considered how the

question stands upon principle, we have to inquire how it stands upon authority. The defendant relies upon Wood v. Anders, 5 Bush, 601; Henchey v. Chicago, 41 Ill. 136; Coughlin v. New York C. & H. R. R. Co. 71 N. Y. 443, 27 Am. Rep. 75; Hobson v. Watson, 34 Me. 20, 56 Am. Dec. 632; Hutchinson v. Howard, 15 Vt. 544; Foot v. Tewksbury, 2 Vt. 97; Hutchinson v. Pettes, 18 Vt. 614; Chapman v. Haw, 1 Taunt. 341, 9 Revised Rep. 786. All these cases, except the first, are cited in support of the proposition that there cannot be an attorney's lien before judgment. *But under our statute it is evident that there can be.* The provision under consideration *is found in subdivision 3 of § 215 of the Code.* Subdivision 4 of the same section provides for obtaining a lien after judgment. If no lien could be had except after judgment, no force could be given to subdivision 3. Besides, in Myers v. McHugh, 16 Iowa, 335, above cited, the existence of an attorney's lien before judgment was expressly recognized. The case of Wood v. Anders, 5 Bush, 601, cited by defendant, was decided under a statute which is in these words: 'Attorneys at law shall have a lien upon any chose in action, account, or other claim or demand put into his hands for suit or collection.' It was held that the claim or demand contemplated by the statute was a claim or demand arising only by contract. We cannot say, taking the whole provision together, that the construction placed upon the language used is not correct. *But our statute is different. It gives a lien upon money due.* It gives a lien, we think, wherever there is a liability to be discharged in money and an action is brought for its recovery. Damages for a tort are to be paid in money. It may be that the lien in such case, or in any case, *is not enforceable until the amount* has been determined by judgment *or agreement.* But whenever enforceable, the lien dates from the service of the notice. Code, § 215. The only decision to which our attention has been called, made by an appellate court upon a statute similar to ours, is in Kansas P. R. Co. v. Thacher, 17 Kan. 92. That action, like the present, was brought to recover for personal injuries. Notice of a claim of an attorney's lien was given. Afterwards the company settled with and paid off the claimant, and no judgment was rendered. The court held that the lien attached, and that the attorneys were entitled to recover of the company. The court said: "This (statute) gives a lien not simply upon a judgment, but upon "money due." It does not specify for what

the money must be due, nor limit the lien to any particular class of liability or form of action. Wherever an action is pending in which money is due, the attorney may establish his lien. And in an action the verdict and judgment do not create the liability, do not make the money due. They are simply the conclusive evidence of the amount due from the commencement of the action.' *In our opinion, then, the fact that the action in which the plaintiff's lien was sought was for a tort, and no judgment was rendered, is not sufficient to defeat their lien."*

In speaking of this subject the author in Ruling Case Law says: "The lien which the statute fixes on the plaintiff's cause of action follows the transition, without interruption, and simply attaches to that into which the right of action is merged. If a judicial recovery is obtained, the lien attaches to that; *if a compromise agreement is made,* the lien attaches to that; and in each case the attorney's interest is such that it cannot be defeated or satisfied by a voluntary payment to his client without his consent. Money *paid to a litigant in settlement of* a claim is held to be *'recovered'* within the meaning of that word as used in an attorney's lien law." 2 R. C. L. 1081.

We agree with counsel for respondent that it is opposed to the policy of the law that any barrier shall be interposed to the right of the client to settle his controversy himself, and to dismiss his own cause of action without the dictation of his counsel. Howard v. Ward, 31 S. D. 114, 139 N. W. 771; Kansas City Elev. R. Co. v. Service, 77 Kan. 316, 14 L.R.A.(N.S.) 1105, 94 Pac. 262; Newport Rolling Mill Co. v. Hall, 147 Ky. 598, 144 S. W. 760; Williams v. Ingersoll, 89 N. Y. 508; Davis v. Webber, 66 Ark. 190, 45 L.R.A. 196, 74 Am. St. Rep. 81, 49 S. W. 822; North Chicago Street R. Co. v. Ackley, 171 Ill. 100, 44 L.R.A. 147, 49 N. E. 222; Lipscomb v. Adams, 193 Mo. 530, 112 Am. St. Rep. 500, 91 S. W. 1046.

We realize, of course, that there are some authorities which hold that the invalidity of an agreement which provides that the client shall not settle the controversy without the consent of the attorney renders the whole contract invalid, the preliminary oral negotiations and the right to recover for the reasonable value of the services being merged in the written contract, and the written contract being void. See Kansas City Elev. R. Co. v. Service, 77 Kan. 316, 14 L.R.A.(N.S.) 1105, 94 Pac. 262; Moreland v. Devenney, 72 Kan. 471, 83 Pac. 1097; Bowman

v. Phillips, 41 Kan. 364, 3 L.R.A. 631, 13 Am. St. Rep. 292, 21 Pac. 230. The cases cited, however, do not seem to express the general rule; and we prefer to follow that general rule which seems to be that "where a contract between an attorney and his client is valid except as to the clause prohibiting either from settling without the consent of the other, this clause may be stricken from the contract and the balance of it upheld." See Newport Rolling Mill Co. v. Hall, 147 Ky. 598, 144 S. W. 760; Jackson v. Stearns, 48 Or. 25, 5 L.R.A.(N.S.) 390, 84 Pac. 798.

The holding which we make, however, in no way interferes with this right of settlement when legitimately and honestly pursued. We, in fact, adopt the statement of the law on the subject which is to be found on page 1080, vol. 2, of Ruling Case Law, and which is as follows: "Since the charging lien of an attorney does not attach before judgment, *in the absence of statute giving a lien on the cause of action or on the property involved, or on money in the hands of the adverse party,* or where a contract between the parties operates as an equitable lien on or an assignment of the cause of action, the fact that the lien of the attorney will attach to the judgment, decree, or award when obtained, *will not affect the almost universally conceded right* of the client at any time before judgment to *dismiss, compromise, or settle his cause of action* without his attorney's consent or even over his objection, where such dismissal, compromise, or settlement is effected in good faith, and thereby to prevent the attorney's lien from attaching to the money or property received by the client in settlement. The lien of the attorney may be defeated by such act of the client, though the latter agreed to pay the attorney a percentage of the proceeds of the judgment, and notwithstanding an express agreement on the part of the client not to dismiss, settle, or compromise without the consent of the attorney. *Even in those jurisdictions where the attorney's lien attaches by virtue of statute to the cause of action, to the property involved, or to money in the hands of the adverse party, it has been held that the client may compromise or settle the litigation without the consent of the attorney, but where such right is exercised the lien of the attorney will not be defeated thereby,* but *will attach to the proceeds of the settlement.* The lien which the statute fixes on the plaintiff's cause of action follows the transition, without interruption, and simply attaches to that into which the right of action is merged. If a judicial recovery is obtained, the

lien attaches to that; *if a compromise agreement is made, the lien attaches to that;* and in each case the attorney's interest is such that it cannot be defeated or satisfied by a voluntary payment to his client without his consent." (See also Standidge v. Chicago R. Co. 254 Ill. 524, 40 L.R.A.(N.S.) 529, 98 N. E. 963, Ann. Cas. 1913C, 65.

It is perfectly clear that a lien would have existed in favor of the attorney on any judgment that might have been obtained, and that such a lien would not have been against the policy of the law, even though the action happened to be a tort action. It seems to be equally clear that if a settlement has been agreed upon in the action, and the attorney had been afterwards employed to sue on and to enforce that contract of settlement, a lien could have been given to him in the matter. What supposed rule of public policy then does a statute violate which, though not depriving the client of the right to settle when and how he pleases, gives to the attorney, through whose services that settlement has presumably in a large measure been made obtainable, a lien upon whatever amount may be agreed to be paid?

Counsel is entirely in error in his assumption made upon the oral argument that contingent fees in personal injury suits are frowned upon by the law. Their validity is now, at least in America, everywhere recognized, and it is a matter of common knowledge, or should be a matter of common knowledge to every lawyer and judge, that the American Bar Association has refused to disapprove of them, and, although recognizing their liability to abuse, has merely sought to guard against that abuse. The code of ethics of the American Bar Association goes no further than to say that "contingent fees, where sanctioned by law, should be under the supervision of the court, in order that clients may be protected from unjust charges." See 34 Am. Bar Asso. Rep. p. 1163.

The reason is very clear and that is that the original reason for the protest against contingent fees and champertous contracts no longer exists, and not only the American bar, but the American legislatures, have long since come to recognize the fact. The English rule against contingent fees has never in fact generally prevailed in America, and even that rule was the result of an effort to cover up and perpetuate injustice rather than to prevent it. It was the result, indeed, of two great arbitrary confiscations of property; those perpetrated by the Norman

Kings when they dispossessed the Saxon proprietors and parceled their lands among their own retainers, and those perpetrated by the Parliament of Henry VIII. when the churches were dispossessed and the same division of property took place. Those in control did not want titles litigated or suits encouraged, and hence the rules against champerty and maintenance, while those against contingent fees have only been justified in England in later days by a resort to the fiction that the attorney is not a "laborer entitled to his hire," but an aristocrat, beneath whose dignity it is, and who therefore is not allowed, to contract for any fees at all. "The dignity of the role, instead of any principle of policy, furnished all the argument that can be brought to the support of the rule." Chief Justice Gibson in Foster v. Jack, 4 Watts, 334; see Lytle v. State, 17 Ark. 608; Foster v. Jack, supra; Davis v. Webber, 66 Ark. 190, 45 L.R.A. 196, 74 Am. St. Rep. 81, 49 S. W. 822. Here in America not only is the contingent fee generally allowed, but in many cases it is socially necessary. The poor man who loses his legs or arms in an accident is perforce pauperized and liable to become a public charge unless some redress can be obtained from the guilty party, and that cannot be had without the help of counsel. Contingent fees are abused, and the ambulance chaser is abroad, but so also is the defaulting client who refuses to pay for service rendered, as well as the unconscionable claim agent. These evils, however, can be cured by legisla-. tion or by proper court supervision, and their cure by no means necessitates the abolition of the contingent fee.

The refinements of ethical theory indeed cannot overcome plain ethical facts. If contingent fees in personal injury suits are not permissible, how, in the majority of instances, can a poor man get any redress at all? When, indeed, the states everywhere provide for employers' liability acts which shall be enforced by the states themselves, or poor men's lawyers who shall not be mere fledgling volunteers, but competent attorneys, then, and not till then, can the contingent fee be done away with.

In dealing with this question of public policy, we cannot do better than to quote from the case of O'Connor v. St. Louis Transit Co. 198 Mo. 641, 115 Am. St. Rep. 495, 97 S. W. 150, 8 Ann. Cas. 703, where the supreme court of Missouri says: "It is insisted by appellant that this act restricts or destroys the defendant's right to contract. We are

unable to give our assent to this insistence.  The provisions of this act simply create a lien upon the cause of action in favor of the attorney at law, and requires the defendant, after due notice, which creates such lien, in dealing with the party as to such cause of action, that such lien shall be respected.  If we are dealing with the owner of a horse, and have notice that there is a valid subsisting lien upon the horse, we would not contend for a moment that such lien could be ignored.  So it is in respect to other property,—in dealing with the owner of it, if we have notice of the existence of a lien, such lien cannot be ignored.  Is there any difference if a defendant has notice of the existence of a lien of an attorney upon a cause of action, and the instances above cited?  We think not.  This law does not deprive a defendant of any of his rights. When the lien is created, in dealing with the plaintiff in respect to such cause of action he must act accordingly.  It does not deprive him of the right to make a settlement, but in making such settlement it simply requires that he shall take into consideration the fact that the attorney at law has a lien upon the cause of action, and, if such lien is ignored, he will be required to account to him in an action at law for the amount of such lien.  This act is vigorously assailed by learned counsel for appellant on the ground that it tends to lead to the commission of unprofessional acts on the part of attorneys.  This may be true in some instances, but the profession of law, when practised upon a high plane, is an honorable one, *and by no means should an act of the general assembly, presumably enacted for the benefit of the honorable practising lawyers of the state, be declared invalid for the reason that instances may arise by reason of the law, which enable some of the less reputable attorneys to do acts which are not commendable along professional lines.* In our opinion this law is constitutional and valid."  See also Standidge v. Chicago R. Co. 254 Ill. 524, 40 L.R.A.(N.S.) 529, 98 N. E. 963, Ann. Cas. 1913C, 65 ; Fischer-Hansen v. Brooklyn Heights R. Co. 173 N. Y. 492, 66 N. E. 395, 13 Am. Neg. Rep. 396.

There is therefore in our opinion no merit in the contention that a contrary view must be taken because the policy of the law is undoubtedly in favor of the settlement of controversies, and that it would be against public policy for a client to relinquish to his attorney the right of settling and disposing of such an action.  The statute, as we construe it, by no means gives to the attorney this right.  If it did so it would ex-

press the public policy of the legislature, and we find nothing in the Constitution to prevent the establishing of that public policy. It does not, however, do so. It merely gives to the attorney a lien on the amount of "money due his client in the hands of the adverse party, or attorney of such party, in an action or proceeding in which the attorney claiming the lien was employed from the time of giving notice in writing to such adverse party, or the attorney of such party." Comp. Laws 1913, § 6875.

There was no money due in the hands of the adverse party until the settlement was made, and that settlement, under the common law and under the statute, the client was at liberty to make even without the consent of his attorney. Immediately, however, that the settlement was made, the controversy became liquidated, and there was a sum of money due and owing to the plaintiff and in the hands of the defendant. See Standidge v. Chicago R. Co. supra, 2 R. C. L. 1081. Then, and not till then, did the lien vest, but at that time it was valid and operative. It vested and was operative merely upon the amount which had been agreed to be paid to the client and the attorney, who, having no right to dictate the terms of settlement, could not claim a lien upon any greater amount. See 2 R. C. L. 1081.

We have carefully examined the authorities cited by counsel for respondent, and find them by no means as conclusive as they seem to appear to him. The case of Howard v. Ward, 31 S. D. 114, 139 N. W. 771, was one in which the plaintiff's attorney sought to set aside a settlement which had been made by the defendant with his client. There was in it no attempt to assert a lien on the amount for which the settlement was made under a statute similar to our own.

The case of Lawrence v. Martin, 22 Cal. 174, merely involved the assignability of a cause of action for malicious prosecution, and no attorney's lien or statute creating the same was in any way involved.

The case of Coughlin v. New York C. & H. R. R. Co. 71 N. Y. 444, 27 Am. Rep. 75, was handed down in 1877, and nowhere considers or passes upon the right of an attorney to a lien under a statute similar to our own. The case of John V. Farwell Co. v. Wolf (John V. Farwell Co. v. Josephson) 96 Wis. 10, 37 L.R.A. 138, 65 Am. St. Rep. 22, 70 N. W. 289, 71 N. W. 109, involves the assignability of a cause of action for fraud merely, and the right of an attorney to a lien is not

considered nor discussed. The case of Pulver v. Harris, 52 N. Y. 73, was handed down in 1873, and no statute similar to our own was discussed or involved. The case of Murray v. Buell, 76 Wis. 657, 20 Am. St. Rep. 92, 45 N. W. 667, merely involves the assignability of an action for conspiracy, and no attorney's lien is discussed or considered. The same is true of the case of Tyler v. Superior Ct. 30 R. I. 107, 23 L.R.A.(N.S.) 1045, 73 Atl. 467, the action involved, however, being one of assault and battery.

The case of Hammons v. Great Northern R. Co. 53 Minn. 249, 54 N. W. 1108, holds that a lien cannot be created upon a mere right of action for a personal tort, and bases its conclusion upon the fact that the cause of action does not survive, but discusses no statute. It relies upon the case of Hunt v. Conrad, 47 Minn. 557, 14 L.R.A. 512, 50 N. W. 614; which holds that a cause of action for false imprisonment cannot be assigned, but passes upon no statute relating to an attorney's lien. The case of Anderson v. Itasca Lumber Co. 86 Minn. 480, 91 N. W. 12, 291, passed upon a statute similar to our own, and is an authority for respondent. It, however, seems to concede that a lien would vest in the judgment, and in that case there would be *money due* in the hands of the defendant. It is difficult for us to see, if this is the case, why there would not be money due after a settlement had been made. The case of Boogren v. St. Paul City R. Co. 97 Minn. 51, 3 L.R.A. (N.S.) 379, 114 Am. St. Rep. 691, 106 N. W. 104, is a case, not where the attorney seeks to impose a lien upon the amount for which the client has settled, but to continue the action in order to assert a lien. It may, however, generally speaking, be considered an authority in support of the contention of the respondent.

The case of Smelker v. Chicago & N. W. R. Co. 106 Wis. 135, 81 N. W. 994, seems to recognize an attorney's lien in a tort action, but lays down a rule of procedure which we hardly wish to recognize here, and which is not argued for by respondents. It is that "under Rev. Stat. 1898, § 2591a, providing that one claiming a right of action sounding in tort, or for unliquidated damages, may contract with an attorney to prosecute it, and give him a lien on such cause of action as security for his fees, and that, when notice of the agreement is given the opposite party, no settlement or judgment of such action shall be valid as against the lien, provided the agreement for fees be fair and reasonable, settle-

ment, without such attorneys' knowledge, does not give them a right to maintain in their own name against the defendant an action for their fees, though the agreement was that they should receive one third of any amount recovered, but their remedy is by prosecuting the original action, in which they must prove the case as though there had been no attempted settlement."

The case of Hanna v. Island Coal Co. 5 Ind. App. 163, 51 Am. St. Rep. 246, 31 N. E. 846, was handed down in a state where there was no provision for an attorney's lien on "money due" in the hands of the defendant, but merely on *any judgment rendered* in favor of any person or persons employing such attorney.

The judgment of the District Court is reversed, and the cause is remanded for further proceedings according to law.

Fisk, Ch. J. I most respectfully dissent.

On Petition for Rehearing (Filed March 18, 1915).

Goss, J. A strong petition for rehearing has been filed. The writer can add but little to what has been well said in the main opinion by Justice Bruce. As the only statutes identical with our statute of peculiar phraseology are those of Kansas and Iowa, decisions from those states should have great weight in declaring the construction of our statute. Especially is this so when it had received a construction by the supreme court of Kansas before or practically contemporaneous with its adoption here. The decision in 1876 of Kansas P. R. Co. v. Thacher, 17 Kan. 92, characteristic of opinions written by Justice Brewer, left little unsaid. It is directly in point, and supports every contention of the plaintiffs, and is based on the same statute. That decision has ever continued without modification as the law of that state and as a satisfactory construction of the statute before us. Smith v. Chicago, R. I. & P. R. Co. 56 Iowa, 720, 10 N. W. 244, the first pronouncement of the supreme court of Iowa on the subject in tort action, cites and follows the Kansas case, and has likewise remained the law of that state. This statute was adopted here as § 9 of chapter 18 of Revised Codes of Dakota territory of 1877 prior to its construction in Iowa, but one year after it had been construed in Kansas. With the adoption of the

statute from Kansas was also adopted its construction, and this is true whether it was indirectly adopted therefrom through Iowa or directly from Kansas. The statute first appeared in Iowa as § 2 of chapter 167 of Laws of 1870. It existed prior to 1866 in Kansas.

Up to two years ago Minnesota had a statute somewhat similar, which read, "upon money in the hands of the adverse party," instead of like ours, "upon money due his client in the hands of the adverse party." The Minnesota holding, Anderson v. Itasca Lumber Co. 86 Minn. 480, 91 N. W. 12, 291, has been against the right to a lien on settlement before judgment until the holding in Desaman v. Butler Bros. 118 Minn. 198, 136 N. W. 747, Ann. Cas. 1913E, 643, holding that a collusive settlement after verdict renders the party against whom the verdict was had liable for an attorney's lien as for the settlement of a judgment. See note to Ann. Cas. 1913E, 646. Nebraska and Minnesota long had the same statute. It is significant that on the identical statute, as so construed in Minnesota, Nebraska in Corson v. Lewis, 77 Neb. 454, 114 N. W. 281, has elected to follow Kansas and Iowa, whose statute we have. After answering every contention made by respondent's counsel in the instant case, including that of nonassignability of causes of action for tort, the Nebraska supreme court in 1907 said: "We prefer to follow the courts of Kansas and Iowa in holding that in a pending cause of this nature, notice of an attorney's lien properly given binds the defendant, so that a settlement between the parties and payment before judgment will not operate to defeat the attorney's right."

And legislation in at least three of the states whose precedent we are urged to adopt, viz., New York, Minnesota, and Wisconsin, establishes that the early statutes, as construed in those states, were so unsatisfactory in practice as to cause the enactment of unequivocal statutes granting the attorney a lien on the cause of action whether in tort or in contract. Subdivision 3 of § 4955, Minn. Gen. Stat. 1913, amending prior law, and Smelker v. Chicago & N. W. R. Co. 106 Wis. 135, 81 N. W. 994. In Fischer-Hansen v. Brooklyn Heights R. Co. 173 N. Y. 492, 66 N. E. 395, 13 Am. Neg. Rep. 396, Justice Vann reviews the legislation of that state. This case is also authority for the kind of action brought in the instant case,—a separate action in equity to define, determine, and enforce the attorney's lien of the plain-

tiffs, instead of the procedure sometimes used in some other states, that of continuing proceedings entitled as in the former action or by intervening therein, as illustrated by Desaman v. Butler Bros. and Corson v. Lewis, supra, respectively. See note in 51 Am. St. Rep. 251; also discussion in text with citation of authority at 2 R. C. L. 1080–1086. Here a statutory attorney's charging lien, sought to be enforced by an independent action in equity, is being dealt with. No common-law lien rules apply. The trend of decisions is toward adequate protection to the attorney against unjust and inequitable settlements. My conclusion is that this lien existed in an inchoate form from and after notice thereof given until a condition arose whereunder it became complete; and such was the situation immediately upon the agreement made between the client and the defendant, whereby the unliquidated liability in tort became converted into an amount certain and a recovery in the action. Standidge v. Chicago R. Co. 254 Ill. 524, 40 L.R.A.(N.S.) 529, 98 N. E. 963, Ann. Cas. 1913C, 65. Thereupon the lien of the attorney immediately attached to the fund, whatever its form. It was then money due "in the hands of the adverse party" within the meaning and intent of the statute.

Nor is the right of the defendant to buy its peace involved; nor is the right of the plaintiff to make a bona fide settlement with defendant necessary to be considered. As to these respective rights the courts of all states, those denying as well as those granting the attorney's lien, are in accord. Courts have the power, and exercise it, to protect the client from the unscrupulous attorney whenever necessary, and that power must not be confused or confounded with authority to likewise preserve the attorney's rights from his unscrupulous client in a collusive settlement with a naturally unfriendly defendant. These questions are discussed in Fischer-Hansen v. Brooklyn Heights R. Co. and in Desaman v. Butler Bros. supra, and cases cited. Paragraph 13 of the complaint charges a collusive and fraudulent settlement "secretly for the purpose of cheating and defrauding said firm out of their attorney fees in said action." As the lien attached to this money in the hands of the opposite party in that pending action before its payment to the plaintiff in that action, it was not discharged by said payment; and for the purposes of this action, to the amount of the lien, the fund is to be treated as still in the hands of the defendant company and sub-

ject to court order. This assumes, of course, on demurrer only, the truth of all matters in the complaint.

Rehearing is denied.